FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 14, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RECHAEL DRIVER,<br><br>            Plaintiff,<br><br>    v.<br><br>CLARKSON DAVIS, a Texas limited liability corporation; JASON PEDIGO, an individual; COURTYARD SPOKANE DOWNTOWN AT THE CONVENTION CENTER, an unknown business entity; COURTYARD MANAGEMENT CORPORATION; a Delaware corporation; MARCOURT INVESTMENTS INCORPORATED, a Maryland corporation; and DOES 1 through 50,<br><br>            Defendants. | No. 2:17-CV-00303-SMJ<br><br>**ORDER DENYING CLARKSON DAVIS'S MOTION TO DISMISS OR TRANSFER VENUE** |

Before the Court is Defendant Clarkson Davis's Motion to Dismiss, or Transfer Venue, ECF No. 27. Driver and Defendants Courtyard Spokane Downtown at the Convention Center, Courtyard Management Corporation and MarCourt Investment Incorporated (collectively, Courtyard Defendants) oppose the motion, and all parties, with the exception of Defendant Jason Pedigo, submitted briefing in support of their positions. The Court held a hearing on December 12, 2017, and took the matter under advisement.

ORDER - 1

Clarkson Davis argues that the Court lacks personal jurisdiction and that venue in the Eastern District of Washington is improper. In the alternative, Clarkson Davis moves for discretionary transfer of venue to the Northern District of Texas under 28 U.S.C. § 1404(a). Driver and the Courtyard Defendants oppose the motion on all grounds. Because Clarkson Davis purposefully directed its business towards Washington State and a substantial portion of the events giving rise to Driver's claims took place in Spokane, Washington, Clarkson Davis's jurisdictional arguments fail. Although the considerations governing discretionary transfer are more evenly balanced, the interest of justice ultimately favors retaining all claims in this District. Accordingly, Clarkson-Davis's motion is denied in full.

**BACKGROUND**

On July 27, 2016, Jason Pedigo attempted to spy on his then-coworker Rechael Driver while on a business trip in Spokane, Washington. Both Driver and Pedigo were employed by Clarkson Davis, a small Texas-based consulting firm. *See* ECF No. 42 at 2–3.

Pursuant to a 2015 Consulting Services Agreement with the nonprofit Feeding America, Clarkson Davis provided consulting services to food banks throughout the nation. ECF No. 27-1 at 3. When necessary, Clarkson Davis would send its employees on business trips to consult with the nonprofit food banks designated by Feeding America. *Id.* at 3–4.

ORDER **-** 2

As part of her job duties, Driver was required to travel to meet with potential clients across the United States. *See* ECF No. 42 at 2–3. Both Driver and Pedigo stayed at the Courtyard Spokane on at least two occasions prior to the July 28, 2016 incident. ECF No. 53 at 2.

On July 25, 2017, Driver and Pedigo traveled to Spokane on behalf of Clarkson Davis to consult with Washington-based organizations selected by Feeding America. ECF No. 42 at 2. Driver and Pedigo were scheduled to stay at the Courtyard Spokane for three nights, from July 25 through July 28, 2016. ECF No. 53 at 2. They were housed in adjoining rooms, which were separated by a locked door. *Id.*

On July 27, 2017, Pedigo spied on Driver by inserting a flexible, scope-like spy camera under the door separating their adjoining rooms. ECF No. 43-2. Driver discovered the scope and called the police, who arrested Pedigo. *See* ECF No. 43-1.

After learning of the incident, Clarkson Davis terminated Pedigo's employment. ECF No. 27-1 at 3. Driver returned home to California to spend time with her family. *Id.* Clarkson Davis alleges that Driver failed to respond to its requests to establish a formal "return to work date." *Id.* On August 15, 2016, Clarkson Davis terminated Driver's employment. ECF No. 1 at 13.

On August 28, 2017, Driver filed two lawsuits, one in the Eastern District of Washington, and one in the Northern District of Texas. These lawsuits are based on the same underlying facts, however the suit in the Eastern District of Washington includes the Courtyard Defendants.

## LEGAL STANDARD

**A.  Burden of Proof and Evidence Considered**

Because there is no statutory method for resolving a motion to dismiss for lack of personal jurisdiction, district courts have broad discretion in selecting a mode of determination. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc*., 557 F.2d 1280, 1285 (9th Cir. 1977). The Court may resolve the matter on the pleadings and affidavits, or it may consider discovery materials. "If a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate a prima facie showing of jurisdiction." *Id.* However, "if the pleadings and other submitted materials raise issues of credibility or other disputed questions of fact regarding jurisdiction, the district court has the discretion to take evidence at a preliminary hearing to resolve the contested issues." *Id.* In this situation, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence. *Id.*

Here, it is possible to resolve the motion to dismiss on written materials alone. Accordingly, Driver must establish only a prima facie case for personal jurisdiction over Clarkson Davis.

**B.     Personal Jurisdiction**

The Court "begins its personal jurisdiction analysis with the long-arm statute of the state in which the court sits." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach permitted by the United States Constitution. *See* Wash. Rev. Code § 4.28.185. Because Washington's long-arm statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

Due process requires that the nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 456 U.S. 770, 775

(1984). Specifically, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 746, 753 (2014).

Personal jurisdiction exists in two forms: general and specific. *See Dole Food Co. v. Watt*s, 303 F.3d 1104, 1111 (9th Cir. 2002). Courts have general jurisdiction over a non-resident when there is a "continuous systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801. Personal jurisdiction exists when (1) the defendant purposefully availed itself of the laws of the forum state; (2) plaintiff's claims arise out of the defendant's activities in the forum state; and (3) the exercise of jurisdiction is reasonable. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960–61 (9th Cir. 2004).

**C.  Venue**

Under 28 U.S.C. § 1391(b), a case may be brought in the venue in which any defendant resides, if all defendants are residents of the state in which the district is located, where a "substantial part" of the events or omissions giving rise to the claim occurred, or—if there is no other district—any jurisdiction in which any defendant is subject to the court's personal jurisdiction. If a matter is improperly venued, the Court may dismiss the case, or, in the interest of justice, transfer the case to the appropriate venue. 28 U.S.C. § 1406(a).

Where jurisdiction is proper, the Court may still transfer an action to any other district or division where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. 1404(a).

## DISCUSSION

**A.  The Court has specific personal jurisdiction over Clarkson Davis because it purposefully conducted business activities in Washington State.**

Driver does not dispute that general jurisdiction is lacking in this matter. ECF No. 41 at 4. Accordingly, the Court turns to whether specific jurisdiction exists.

In the Ninth Circuit, courts evaluate whether specific jurisdiction exists using a three part test: (1) the defendant must have purposefully availed or purposefully directed his activities or consummated some transaction with the form or a forum resident, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Schwarzenegger*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff successfully establishes the first two prongs, the burden shifts to the defendant to set forth a compelling reason that the exercise of jurisdiction would not be reasonable. *Id.*

ORDER - 7

### 1. Clarkson Davis's Washington-based business activities satisfy the purposeful direction standard.

Courts analyze the first prong of the jurisdictional analysis under either a "purposeful availment" or "purposeful direction" standard, which are distinct. *Wash. Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Generally, for claims sounding in tort, courts apply a "purposeful direction" test. The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co.*, 303 F.3d at 1111.

There is little question that Clarkson Davis purposefully directed its actions to Washington State by sending its employees to the state to conduct business there. Clarkson Davis argues that it did not "expressly aim, market or direct its business at Washington-based organizations" but simply "ended up having to travel there" to fulfill its contract with Feeding America. ECF No. 52 at 7. Regardless of how its business in Washington came to be, the fact remains that Clarkson Davis sent its employees to Washington State for the purpose of conducting or transacting business. This is sufficient for purposeful direction.

### 2. It is not unreasonable to exercise jurisdiction in this District.

Clarkson Davis does not dispute that the claims against it arise out of conduct perpetrated by its employee, Jason Pedigo, while in Washington State. The burden

ORDER - 8

therefore shifts to Clarkson Davis to establish that the Court's exercise of jurisdiction in this matter would be unreasonable.

Courts in the Ninth Circuit consider seven factors in considering whether the exercise of jurisdiction is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's convenient and effective relief; and (7) the existence of an alternative forum. *Harris Rutsky & Co. Ins. Servs. v. Cell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). Contrary to Clarkson Davis's arguments, the balance of these factors weighs in favor of this Court's continued jurisdiction.

Most factors favor jurisdiction in this District. This state has an interest in adjudicating the dispute because it involves tortious conduct that took place—at least in part—in Washington. Driver's convenience and effective relief weigh strongly in favor of this jurisdiction because this is the only District with jurisdiction over both Clarkson Davis and the Courtyard Defendants. Because the claims arise from the same operative facts, judicial economy likewise strongly favors resolution of the claims in this Court.

Clarkson Davis argues that judicial economy cuts against jurisdiction because the bulk of the witnesses and evidence are located in the Northern District of Texas. Upon closer examination, however, this factor does not appear to weigh strongly in either party's favor. Certain witnesses, including Clarkson Davis's former employees, reside in Texas, while others, including the hotel employees and police officers, reside in Washington. Neither are within the subpoena power of the other state's courts. As for the evidence, much of it is located in Spokane, Washington, where Pedigo's criminal conduct occurred, and much of it is located in Texas, where Driver's employment with Clarkson Davis was based.

Only two factors are squarely in Clarkson Davis's favor: the defendant's convenience and the availability of an alternative forum. Clarkson Davis asserts, and the Court has no reason to doubt, that it would be inconvenient to defend a claim in Washington State. But inconvenience alone is insufficient to render jurisdiction unreasonable. Moreover, although Texas provides a potential alternate forum, as discussed above, Texas courts would not have jurisdiction to hear the entirety of Driver's claims. Accordingly, Clarkson Davis has not met its burden to demonstrate that continued jurisdiction is unreasonable.

**B.  This matter is properly venued in this District because a substantial portion of the events giving rise to the claims occurred in Spokane, Washington.**

Clarkson Davis also moves to dismiss the case for improper venue. Under 28 U.S.C. § 1391(b)(2), "venue is proper in a judicial district if 'a substantial part of the events or omissions giving rise to the claim occurred' in that district." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). Washington courts generally recognize that a tort claim "occurs" where the last event or omission giving rise to the claim takes place. *See MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 804 P.2d 627, 634 (Wash. Ct. App. 1991). Here, the events perpetrated by Pedigo in Spokane, Washington, either form the foundation for, or set in motion, Driver's claims. Accordingly, a substantial part of the events or omissions giving rise to the claims occurred in this District and venue is therefore proper.

**C.  The interest of justice favors retaining all of Driver's claims in this District.**

Finally, in the alternative, Clarkson Davis moves to transfer this action to the Northern District of Texas under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice a district court may transfer any civil action to any other district or division where it might have been brought." This section is intended to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary

ORDER **-** 11

inconvenience and expense.'" *Van Dussen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL – 585*, 364 U.S. 19, 26–27 (1960)).

On its face, 28 U.S.C. § 1404(a) has two requirements, (1) the district to which defendants seek to transfer the action is one in which the action "might have been brought," and (2) the transfer is for the convenience of parties and witnesses, and in the interest of justice. There is no question here that Driver's claims against Clarkson Davis could have been, and indeed were, brought in the Northern District of Texas. ECF No. 43 at 2. The members of Clarkson Davis LLC reside in Texas, and many of the events precipitating Driver's employment law claims occurred in Texas. The decision to transfer, then, turns on whether the Court finds such transfer to be for the "convenience of the parties and witnesses" and in the "interest of justice." The burden is on the defendants to demonstrate that the transfer is warranted. *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (C.D. Cal. 2005).

1. **Convenience of the Parties**

Clarkson Davis asserts that it would suffer great expense and inconvenience if forced to defend itself in this District. It argues that its headquarters and local counsel are all located in Texas. However, Clarkson Davis also acknowledges that its local counsel has an office in Seattle, and that attorneys in that office could work on the case and appear on Clarkson Davis's behalf if the case were retained in the Eastern District of Washington. ECF No. 58 at 4. Driver no longer resides in Texas,

nor does she reside in Washington. However, the Courtyard Defendants are located in Washington, and the Eastern District of Washington is the only venue in which a federal district court has jurisdiction over all defendants named in this case. Accordingly, Washington is the more convenient venue for both Driver and the Courtyard Defendants.

### 2. Convenience of the Witnesses

When considering the convenience to witnesses, "the convenience of non-party witnesses is the more important factor." *Saleh*, 361 F. Supp. 2d at 1160 (quoting *Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y 1990)). The Court considers not only how many witnesses each side may have, but also the relative importance of their testimony. *Id.* Because a substantial number of supporting non-party witnesses reside in both Washington and Texas, this factor does not weigh heavily in favor of either district.

The location of the parties' anticipated witnesses is fairly evenly divided between Texas and Washington State. Driver anticipates calling only one non-party witness based in Texas. She represents that the remainder of the witnesses she intends to call—Marriott employees and responding officers—are located in Spokane. Clarkson Davis asserts that numerous Texas-based non-party witnesses will be required to defend against Driver's employment claims. It estimates this will require testimony from at least ten former Clarkson Davis employees. ECF No. 58

ORDER - 13

at 3. The Texas witnesses are beyond the Court's subpoena powers. They will therefore be inconvenienced by the burden of traveling for trial only if they so choose. Otherwise, the parties may use the depositions of the non-party Texas-based witnesses if the case proceeds to trial. Given these considerations, the convenience and availability of non-party witnesses does not factor strongly into the Court's analysis.

### 3. Interest of Justice

The interest of justice is the most important factor of all. In considering the interest of justice, the Court considers such factors as "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Fin., Inc. v. Midwhey Powder Co*. 883F.2d 1286, 1293 (9th Cir. 1989). Overall, these factors favor retaining Driver's case in the Eastern District of Washington.

Considerations of timeliness and familiarity with Washington law both favor retaining Driver's claims in this District. First, this District has a substantially lower number of civil case filings on average. *See* United States Courts, *Federal Judicial Caseload Statistics*, tbl. C-1, http://www.uscourts.gov/sites/default/files/data_tables/fjcs_c1_0331.2017.pdf (last visited December 12, 2017). The parties are therefore more likely to obtain an expeditious resolution of these claims in Driver's chosen forum. Second, this Court routinely applies Washington law. While

ORDER - 14

the Court harbors no doubt that the learned judges in the Northern District of Texas can capably apply Washington law, the fact remains that this Court is quite familiar with the law of the state in which it sits. It is therefore most efficient to retaining the claims in this District.

Finally, and most importantly, retaining jurisdiction enables Driver to try all claims together. Clarkson Davis argues that eight of Driver's ten claims concern Driver's employment relationship with the company and do not share common issues of fact with the remaining claims, which are based on Pedigo's criminal conduct in Spokane, Washington. However, each of the claims alleged in Driver's complaint implicates—to some extent—common facts and circumstances. Severing the claims would require Driver to re-litigate and re-establish facts common to both cases. The Court declines to generate such needlessly duplicative judicial proceedings.

Moreover, severing the claims would force Driver to litigate in two different districts. This would merely shift the burden from Clarkson Davis to Driver. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (noting that the court may not transfer a case simply to shift the burden from one party to another). Clarkson Davis argues that, because there is already a pending case in the Northern District, Driver would not be inconvenienced by transferring the claims. However, Driver filed the claim in Texas as a prophylactic measure, to

guard against any statute of limitations issues should this Court find it lacked jurisdiction over Clarkson Davis. Driver has made clear that her chosen forum is the Eastern District of Washington, where she can litigate all claims together.

While convenience does not strongly favor either jurisdiction, the interest of justice weighs heavily in favor of retaining jurisdiction in this District. Accordingly, Clarkson Davis's motion for discretionary transfer under 28 U.S.C. § 1404(a) fails.

Accordingly, **IT IS HEREBY ORDERED**:

**1.** Clarkson Davis's Motion to Dismiss or, in the Alternative, Motion to Transfer Venue, **ECF No. 27**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 14th day of December 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge